Good morning, your honors. Well, today I think we have a fairly simple, straightforward issue. I don't think there's really any factual dispute. And so I think where the parties disagree is that on the principle of whether driving a personal vehicle to a bank during a commission of a structuring financial transaction offense constitutes a substantial connection that by itself would justify forfeiture of my client's truck. And I think that's the crux of the whole issue. Ms. Shanholtzer was driving her personal vehicle during the commission of this crime to the banks in order to make these transactions. There was no indication that there was any other circumstances that would justify forfeiture of her truck in this. She was simply driving to the bank. You mean from one bank to another with the money in the car? Yes, and that's how... If it were an airplane and she was using an airplane to go from, say, Juneau to Anchorage, do you think the airplane might be forfeitable? It might. It possibly could because I think that's a different, I mean, that's actually in connection, a substantial part of that. Suppose she used the airplane to get to Juneau where the bank was. No, I don't think that would be... What's the difference between using an airplane and using a truck except for two different vehicles? Commuting to the scene of the crime or not. Well, exactly. I mean, this is why the court asked us to discuss the Howard decision, and I think that's very informative. Our brief is based on Fourth and Eighth Circuit cases that discuss that a substantial connection should be involved. Some of the cases talk about there has to be something like counter-surveillance, some kind of use of the car as part of the commission of the crime. One case says just driving to the pharmacy and committing the crime at the pharmacy doesn't justify having the vehicle forfeited. And in the particular case in the Ninth Circuit in Howard, it specifically says the use of an automobile to commute to the scene of a crime does not justify a seizure. Now, that's under a different forfeiture statute, but that reasoning, I think, directly applies to this case. And so for Ms. Schanzholzer to drive to the bank with cash in her truck, I mean, that is not a crime any more than it is to drive to the scene of the crime in Howard. The crime in Howard was driving the load vehicle. The crime here would be committed in the bank. I mean, she could drive around all day with the money and nothing would be illegal about that at that point, right? Absolutely. And so the crime was committed in the bank, and there's nothing to justify forfeiture of the vehicle because that's the way she got to the bank. Then I may have the facts wrong. I thought she went to a bank in Seward, took out cash from a safe deposit box, less than $10,000 a month, and drove to a bank in Anchorage. Well, she had bank accounts. In a truck, in cash. Right. And deposited the sub-$10,000 in Anchorage. Do I have those facts wrong? No, I think in one occasion she did, but it was branches of the same bank account. She had a house in Seward. She was living with the co-defendant in this case and the other forfeiture issue case here in Anchorage. So she really lived in both places. She had bank accounts at the same institution in both cities. And so she would drive back and forth just in her personal life. Can you clarify? There's kind of two different things. One is where you leave home or whatever your place is and you go to the bank and you have the money in your car. That's potentially called commuting to the bank. What if you go to the bank, you get the money out of the bank, and then you take that money and you drive to the different bank because you want to put it in a different account. And the reason you do that is part of your structuring. There's sort of two different types of use of the vehicle. What about that second one? Why wouldn't that be in connection with? Because you affirmatively are going from bank A to bank B to have this done. And it's not like you went back home and then you went to bank B. And I think under the facts of this case, the first scenario is the one that fits this more appropriately. And the reason I say that was this Shanholter was under a lot of investigation. She had a GPS attached to her car, which was not an issue that was brought up. It would be an interesting issue for I don't know what length of that time, but that's not an issue here. But she was also under surveillance for about eight months. And the agent testified at the hearing that during that time, she was doing her own personal business. She was seeing friends in both Seward and Anchorage. She was frequently at gambling establishments, pull-tail places. I mean, that was an issue she had. But that she was not using her vehicle all the time that she was under surveillance for seven or eight months in any type of illegal activity. So I think this fits under the scenario that she was using her car just as her personal transportation. The crimes were committed in the institutions. And she did not contest the forfeiture of all the funds that were involved. She, in all the cases that the government cites, basically deal with funds, whether they could be used during a transaction, like a crime like this, in different monetary forms. But all the cases where somebody just uses a vehicle, including the Howard case and the Fourth Circuit and Eighth Circuit cases we just cite, are not, doesn't reach that level of forfeiture. And so that's simply, I think, the issue in this case. And it doesn't reach the level of forfeiture because she had reasons other than the commission of the crime to use her truck between Seward and Anchorage. Her social reasons, her friends, her business, etc. So if she had twin motives, one innocent, one criminal, to use the truck as a means of personal enjoyment on the one hand, which is civil and not criminal, but she used the truck also to transport the money from Seward to Anchorage to deposit it. The mixed motives save her from finding a substantial connection. No, it's not just the mixed motives. It's not just the dual purpose. What is critical in here is, does the vehicle play a substantial, is there a substantial connection in the sense of facilitate the crime? You mean as a proximate cause? Proximate cause. I don't know if that would... Before she couldn't... No, I think it has to have some greater connection to facilitate the crime as sort of counter surveillance, some type of obstruction of an investigation. These are what the cases say. A vehicle involved in a crime that facilitates the crime more than just commuting to the scene of the crime, just like in Howard. The vehicle has only commuted the defendant to the place where the crime was committed when he got from one vehicle to the other. And that's basically what happened here. My definition of facilitate is to make things easier. And the truck did, I mean, her object was to take out cash in amounts less than $10,000. That's not in dispute, I think. Right, no. And if it made it, if driving the truck made it easier for her to do these multiple transactions, does that make it any different? Well, that's going to be in any case. I mean, therefore, any vehicle would be forfeited because you can't necessarily walk, especially to Seward or to a bank. There has to be something that distinguishes it to make it the level of forfeiture. I mean, I think I can't imagine very many cases going to a bank that somebody is not going to use some type of transportation to get there, rather than walking. So in that sense, an individual drives a truck to a bank and robs the bank. Is the vehicle that was used to go to the bank and rob the bank forfeitable? No, I don't think so. I don't think it's normally forfeited, and I don't think that. Unless there's a getaway. How about if it's used as a getaway? If it's a getaway vehicle, then it's just. Then it changes. Yes. And there's something, that extra element of obstructing the investigation of you doing something more than just commuting to the bank. For example, with Ms. Schanholter, if she had this cash in the bank, and then she had $15,000 and deposited over $10,000 and filed the necessary information, there's no crime. So driving to the bank with the cash in the car was not a crime itself. The crime was committed in the bank, and how she got there under these circumstances is not that extra element, I think, that requires forfeiture of it. And I think that's the whole crux of this issue, is that the government's just overreaching. And, I mean, she's already been convicted. She's been sentenced. She forfeited all the money that was involved, and I think for her to lose her truck, too, is overreaching. And if there's no other questions, I'm going to quit early again. Thank you, Mr. Kirtner. Good morning again. I agree with most of what Mr. Kirtner said, that this is a very narrow issue. It comes down to the definition in Howard, whether if you commute to a crime in a car, it's not subject to forfeiture. If the car is substantially, if it facilitates the crime or there's a substantial connection, it is subject to forfeiture. And I think in this case, it's just simply driven by the facts, which we all agree on. Ms. Schanholzer, for example, was charged in the indictment. She went to the mailbox, the safe deposit box in Seward. She banked at First National Bank, Alaska, FNBA. She kept her account and her safe deposit box in Seward. As the investigation progressed, the customs people were able to notice that there was a correlation between visits to the safe deposit box and subsequent currency deposits, both in Seward and in Anchorage. Of course, we don't know what's in the safe deposit box. The bank only records that you visited your safe deposit box. But they concluded, based on the subsequent activities, that she visited the safe deposit box on August 28th, and then a few minutes later made a $9,000 currency deposit in Seward. What's the distance between Seward and Anchorage? It's about 120 miles. That was presented to Judge Holland. There was a GPS map and a Google map, of course, that we submitted to the court to show the distance. If she had driven to Bank A, took out money, and went home, and then two days later drove to Bank B, and then drove home, would you say the same thing? I'd say it was, because she's using the vehicle to facilitate the crime. How else is she going to get to the bank? Well, that's the problem with Alaska. In California, you might be able to walk from one branch of Wells Fargo to another branch of Bank of America and make the deposits. In Alaska, it's a bit harder to do. Now, if I wanted to rob a bank, and I lived in Anchorage, and I wanted to rob a bank in Seward, I guess I could take the Alaska Railway. You could, in the summertime. But in general, I would take my car. You would take your car. There is a bus service that runs intermittently, but it's not... But that's inconvenient if you want to rob a bank. So if I take my car from Anchorage to Seward, would you forfeit my car if I robbed the bank? I would, because if you're driving up there, and you've got your robbery note, and you've got your gun and your ski mask, and you're taking that in the car, and you go to the bank, if you get caught in the bank, there's a pretty good inference that you're going to use that car, unless it was a stolen car, to drive someplace else. We normally don't do that. But in this case, now let's shift it, because there you've got my ski mask. Now I go from Anchorage to Seward, and I go to my bank. And so far, from my house to my bank, nothing is illegal, right? Right. And I go into my bank, and I take stuff out of my box. Anything illegal so far? No, ma'am. Okay. So I have my car, and then I decide, well, I think I'll deposit this money. And I go somewhere to deposit it. Actually, my driving to the next bank, nothing illegal, right? Let's say I have, it's not a question of intent, I have $9,000 in my purse, and I say, I think I'll go back to Anchorage, so I drive to Anchorage. Have I done anything illegal so far? I think that the assumption about having $9,000, the inference from this, is that she took out about $90,000 and then started making the deposits. And I think that transporting that much cash, after you go straight from the box to the, you drive to the bank in Seward. Well, is there anything illegal about having that much cash unless I cross the border? No, it's not illegal. It's not contraband. Okay, not contraband. So I can have that money in my purse? You can. And I haven't done anything illegal? You haven't done anything illegal. I drive around, you know, southeast down there a little bit, and then I come up here, and still nothing illegal. Nothing illegal about that. And when do I commit my illegal act? When you try to take one transaction, one currency transaction, and break it down into multiple transactions with the intent of evading the currency transaction reporting requirements of the Bank Secrecy Act. And where is that done? That's done in the bank, correct? I think that was done, I mean, the inference is that that was done when a large amount of cash was taken out of the box, and then she went to the counter two minutes later and deposited $9,000, took the rest of the cash back to her car. So she couldn't go back to that bank that day, she couldn't go back to that branch. Sure, but the $9,000, that didn't have really anything to do, so far the car hasn't been used to do anything, right? Right. So why would that be forfeiture, going from my safety deposit box to walking across the bank and giving them the money? At that point, all she's used the truck to do is commute to the bank and make the withdrawal. Once she gets into the truck and drives 120 miles to Anchorage and goes to another branch of... Why do you care so much about the truck? I just, the agent sees the truck and we looked at the law on it and determined that it was subject to forfeiture. I mean, you can ask why she cares, but it's her truck. Right, it's her truck. I mean, why does the government care? They've got her on the structuring transaction. Well, as I think in a sense of fairness, if this was a drug case, and instead of saying cash, you say drugs, I know you can distinguish it because it's contraband, but if somebody drives a nice truck to a drug deal and sells drugs to the confidential informant, then the truck's going to be subject to forfeiture. But then you're carrying around contraband. And the difference is contraband, but in the case of a drug defendant as opposed to a white-collar defendant, if the vehicle's being used for exactly the same purposes, and if the crime, it makes it much easier to commit the crime, and it's simply not commuting like it was in Howard. I mean, Howard, he drives the Buick to where the Chevys park, gets in the Chevy, which is loaded with weed, and drives off. Clearly the Chevy is going to be seized, but the Buick wasn't, was just simply a commuting vehicle, and so they seized it and searched it. So you're saying it's only fair to treat somebody who drives around with illegal weed the same as somebody who drives around with legal money. I think so. Okay. I think that's fair. I don't think we should treat necessarily white-collar offenders more leniently than we treat drug offenders. But I'm a white-collar prosecutor for the most part. You're wearing white shirt. If there's any other questions, I'm happy to answer them. I don't think so. Thank you. Thank you, Your Honors. Well, Your Honors, I don't have anything really to add except to make this distinction that in a drug case, you know, the contraband is in the vehicle, that the crime is transporting the drugs in the vehicle, and that's the big distinction here. And I don't think we should have a different standard of forfeiture because we live in Alaska and we're spread apart. I think that, you know, I think you have to understand the facts of this case and we'd ask the court to reverse this forfeiture order. Thank you. All right. Case just argued, United States v. Stamholder submitted. Thank you both for coming today and repeat performances for both of you. And we'll now turn to the last case on the argument calendar. That is Lewis v. Donnelly.
judges: Hawkins, McKeown, Bea